**HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION; John Wilhelm; Donald M. Taylor; Mark D. Atkinson, Plaintiffs–Appellants,**

v.

**NEVADA GAMING COMMISSION, et al., Defendants–Appellees.**

No. 91–15188.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1992.

Decided Jan. 27, 1993.

George W. Foley, Jr., Pearson & Patton, Las Vegas, NV, for plaintiffs-appellants.

Gloria Stendardi and Charlotte M. Matanane, Deputy Attys. Gen., Las Vegas, NV, for defendants-appellees.

Before: CHAMBERS, HUG, and RYMER, Circuit Judges.*

HUG, Circuit Judge:

An international union and some of its employees contest the validity of certain Nevada gaming control statutes and regulations and their applicability to them. The State of Nevada has a comprehensive statutory system to control the gaming indus-

try in the state. The statutes provide for a Gaming Commission ("Commission") that is to adopt comprehensive regulations interpreting and applying the statutes and to perform adjudicatory functions in enforcing the gaming control statutes and regulations. The statutes also provide for a Gaming Control Board ("Board"), which is the enforcement arm in the system. The statutes and regulations provide for extensive reporting disclosure requirements for the owners and key employees of gaming establishments and provide for disqualification based on criminal or unsavory backgrounds. The statutes also provide for similar requirements for local labor organizations representing gaming employees. Certain personnel of such labor organizations also are subject to reporting and disclosure requirements and are subject to disqualification. The regulations also apply to the personnel of international unions that provide certain services to local unions representing gaming employees.

In this case, the Board notified employees of the Hotel Employees and Restaurant Employees International Union ("International Union") that they were required to comply with the reporting requirements of the gaming control statutes and regulations. Several employees complied; the three persons involved in this appeal have not done so and contest the right of the Board to require them to do so. In this appeal, the International Union and these employees first broadly contest the facial validity of the provisions of the regulatory system that impose reporting and disclosure requirements on labor unions and their personnel on the grounds that they are preempted by the National Labor Relations Act ("NLRA") and the Labor Management Reporting and Disclosure Act ("LMRDA"). Second, they contend that at least the application of these regulations to international union employees is preempted by the NLRA and the LMRDA. Third, they assert that the statutes and regulations violate their First Amendment speech and associational rights. Finally, they con-

---

* At the conference following oral argument, Judge Chambers agreed with the result of this opinion; however, due to illness, he has not reviewed this opinion.

tend that, as a matter of state law, the reporting and disclosure requirements are not applicable to international union personnel. Issues of abstention and ripeness also are involved in this appeal.

The district court dismissed the action on the grounds of ripeness. We affirm, in part, and reverse, in part. Jurisdiction of the district court was based upon 28 U.S.C. § 1331 and § 1343(a)(3). Appellate jurisdiction is based upon 28 U.S.C. § 1291.

## I.

The International Union and individual International Union employees brought this action for declaratory and injunctive relief from certain Commission regulations enacted pursuant to Nevada Revised Statute § 463A. The regulations provide for reporting and disclosure requirements for international union personnel who advise and consult with local unions representing gaming employees. The appellants claimed, in a motion for summary judgment, that the regulations exceeded the authority granted to the Commission by Nevada law, or, if the regulations were found to be valid under state law, that they were preempted by federal law and violated their rights of freedom of speech, freedom of association, and equal protection of the laws. Plaintiffs alternately sought certification of the state law issues to the Nevada Supreme Court or *Pullman* abstention.

The Commission filed a cross-motion for summary judgment, alleging that the case was not ripe for adjudication, that the International Union lacked standing, that *Burford* abstention was appropriate, and that the regulations were valid under state and federal law.

The district court held that although the International Union had standing, the challenges to the state law and regulations were not ripe for review. The court found that no proceedings had been initiated before the Commission to disqualify the plaintiffs for the employees' failure to comply with the disclosure requirements. The court noted that before the plaintiffs could be disqualified, they would be entitled to an administrative hearing and judicial review

of the decision, pursuant to Nevada law. The remaining claims were denied as moot. The International Union and three of its staff members, Wilhelm, Taylor, and Atkinson, timely appealed.

## II.

Nevada regulates labor unions and their employees who represent gaming casino employees in Nevada. Nev.Rev.Stat. §§ 463A.010–.260 (1989). Chapter 463A was enacted in 1975 with the express purposes of ensuring that gaming is conducted freely and honestly and protecting the welfare of gaming casino employees. Nev. Rev.Stat. § 463A.010.3. The statute extends to casino employees, including dealers, floormen, cashiers, money handlers and security officers, but not to ordinary hotel and restaurant personnel. Nev.Rev. Stat. § 463A.020.3.

Unions that represent gaming casino employees are required to submit to the Board a list of all union personnel who:

(a) Adjust grievances for, negotiate or administer the wages, hours, working conditions or conditions of employment of any gaming casino employee;

(b) Solicit, collect or receive any dues, assessments, levies, fines, contributions or other charges within this state for or on behalf of the organization from gaming casino employees; or

(c) Act as officers, members of the governing body, business agents or in any other policymaking or supervisory position in the organization.

Nev.Rev.Stat. § 463A.030.1. Each listed person is required to submit to the Board a personal history disclosure statement and a set of fingerprints. Nev.Rev.Stat. § 463A.030.2. The Commission may require additional information and may add others "whose duties significantly affect the conduct of a gaming operation" to the list of personnel subject to the statute. Nev.Rev.Stat. § 463A.030.4. If the Commission determines that a union employee is unsuitable to represent the interests of gaming casino employees, the Commission has the statutory authority to disqualify

that employee. Nev.Rev.Stat. § 463A.040. The Commission also is authorized to seek injunctions and fines from the individual and from the union by proceeding in state court to enforce a disqualification order. Nev.Rev.Stat. § 463A.250.

The Commission adopted Regulation 19 in 1985 to implement Chapter 463A. The regulation provides that Chapter 463A applies to union personnel who "[f]or compensation advise, represent, or provide other assistance to a labor organization concerning Nevada gaming casino employees with respect to" the activities listed in 463A.030.1(a)–(c), as stated in Regulation 19.020.1(a)–(c). *See* Reg. 19.020.1(d). Local unions are required to identify international union personnel who perform any of the functions listed in Reg. 19.020.1. *See* Reg. 19.030.1(d). The regulation also provides for disqualification of listed personnel for failure to submit the required information. Reg. 19.050.3; *see* Nev.Rev.Stat. § 463A.040.

The Nevada Supreme Court has held that Regulation 19 does not apply directly to an international union itself. *Hotel Employees and Restaurant Employees Int'l Union, AFL–CIO v. State ex rel. Nevada Gaming Control Bd.*, 103 Nev. 588, 747 P.2d 878, 880 (1987). Whether international union *personnel* that perform local union functions may be regulated under Chapter 463A is the question at issue in this case. The Nevada Supreme Court did not rule directly on this question. The court stated:

> Under provisions pertaining to local unions, international union personnel who are involved with Nevada gaming employees are subject to regulation. The local organization is required to provide information about persons from the international who have either performed key functions described in NRS 463A.030, or have advised or consulted with the local union on the performance of such functions. Reg. 19.030. International union personnel listed by the local union are required to make a personal

filing. These provisions are not challenged in this appeal.

*Id.* 747 P.2d at 879 n. 2.

The Board notified the local Culinary Union in June 1987 that it was required to identify international union personnel performing local union functions, pursuant to Nev.Rev.Stat. § 463A.030.1 and Regulation 19.020.1. The local union submitted the names of the individual appellants to the Board, and in May 1988, the Board sent letters to the employees informing them that their failure to comply with Regulation 19 by submitting personal information within the prescribed period "may be deemed grounds for disqualification." They were directed to contact the Board's agent within seven days of receiving the notice. The International Union and several of its employees and officers then filed this action in federal district court to challenge the validity of Regulation 19.030 as it applies to international union personnel.

The individual appellants, John Wilhelm, Donald Taylor, and Mark Atkinson, are employees of the International Union who have not complied with the Board's demand. Wilhelm is a vice-president of the International Union and its western regional director. He serves as the chief negotiator for the Local Joint Executive Board of Las Vegas, which is comprised of Local 226 and Local 165, and which negotiates with approximately 35 licensed gaming establishments in southern Nevada. Wilhelm is the chief spokesman for the Local Joint Executive Board in negotiations. He has engaged in negotiations with licensed gaming establishments either alone or with co-plaintiff Taylor. On those occasions, no officer or employee of either Local 226 or Local 165 has been present. Wilhelm works out of an office in Local 226's Las Vegas Headquarters and has an apartment in Clark County, Nevada. He meets daily with officers and staff of Local 226 on a variety of matters related to the activities of Local 226.

Taylor is an employee of the International Union assigned to assist Local 226. Prior to this assignment, he was employed by Local 86. Taylor makes his home in Las

Vegas, Nevada, and works out of an office in Local 226's Las Vegas headquarters. Taylor assists the Local Joint Executive Board by organizing workers, organizing meetings, and organizing activities, including picket lines, demonstrations, rallies, and phone banks. Taylor has attended negotiations, has trained members and employees of Local 226 in civil disobedience, and has discussed themes for demonstrations. He supervises organizers employed by Local 226 and has authority to correct what he perceives as problems with certain picket lines and demonstrations. He has in the past been specifically authorized by the Local Joint Executive Board to go upon the premises of a licensed gaming establishment to enforce a collective bargaining agreement.

Atkinson is employed by the International Union as the assistant director of research. He is assigned to advise and consult with local unions in Nevada and in this capacity is supervised by Wilhelm. Atkinson has an apartment in southern Nevada and works out of an office in Local 226's Las Vegas Headquarters. Atkinson performs research for the Local Joint Executive Board and on its behalf organizes and conducts press conferences regarding licensed gaming establishments, drafts correspondence to shareholders and others regarding licensed gaming establishments, attends and speaks at shareholders' meetings of publicly traded gaming companies, and drafts newspaper advertisements, leaflets, and pamphlets, which are distributed to the public. He also is involved in producing videotapes, which are distributed to the public, and in creating themes for demonstrations.

### III.

■■■ Both parties raised the issue of abstention. Abstention is appropriate when resolution of a state issue would terminate a controversy and allow constitutional adjudication to be avoided. *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). It is also appropriate when the case involves a local issue arising

out of a complex regulatory scheme. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 332, 63 S.Ct. 1098, 1106, 87 L.Ed. 1424 (1943). "The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

■■■ *Burford* and *Pullman* abstentions are generally inappropriate when the case concerns preemption. *See Stikes v. Chevron USA, Inc.,* 914 F.2d 1265, 1270 (9th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2015, 114 L.Ed.2d 101 (1991); *Knudsen Corp. v. Nevada State Dairy Comm'n,* 676 F.2d 374, 377 (9th Cir.1982). *Pullman* abstention is not appropriate because preemption is not a constitutional issue. *Knudsen,* 676 F.2d at 377. *Burford* abstention is not appropriate because a decision to abstain so as not to interfere with a state regulatory scheme would be an implicit ruling on the merits. *Id.* (citing *International Bhd. of Elec. Workers v. Public Serv. Comm'n,* 614 F.2d 206, 212 n. 1 (9th Cir.1980)).

> A preemption claim alleges in essence that Congress has determined that particular matters are of national concern and should be administered by national, rather than local, institutions. If a preemption claim is well-founded, therefore, *Burford* abstention cannot be appropriate. Hence, a court cannot abstain under *Burford* in a preemption case without implicitly ruling on the merits of the action.

*International Bhd. of Elec. Workers,* 614 F.2d at 212 n. 1.

### IV.

■■■ We hold that the facial preemption challenge to the reporting and disclosure requirements of the regulatory system, affecting labor unions and union personnel, is ripe for review. Whether a dispute is ripe depends on "the fitness of the issues for judicial decision" and "the hardship to the parties" of withholding review. *Abbott Lab. v. Gardner,* 387 U.S. 136, 149,

87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Fitness for resolution depends upon the nature of the issue and the finality of the administrative action. *See id.* Preemption is predominantly a legal question, resolution of which would not be aided greatly by development of a more complete factual record. *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n.,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (resolution of preemption issue need not await development of record by state interpretation or application of statute); *see also Abbott,* 387 U.S. at 149, 87 S.Ct. at 1515 (statutory construction was a purely legal issue ripe for review).

We conclude that the reporting and disclosure regulation is a final agency action because it specifies exactly what must be submitted to satisfy the disclosure requirements, that compliance is mandatory, and that failure to comply is a sufficient basis for disqualification. The Commission, by promulgating Regulation 19, has interpreted Nevada law to apply to the personnel of international unions that perform significant services for local unions representing gaming employees. The Board has made clear to the individual appellants that they must comply with the disclosure law and regulation. This subjects them to enforcement provisions by the Commission. The impact of the regulations is "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *See Abbott,* 387 U.S. at 152, 87 S.Ct. at 1517.

■ The union employees, Wilhelm, Taylor, and Atkinson, are forced to choose between the disadvantages of compliance and the risk of sanctions for failure to comply with clear-cut regulations. *See id.* at 152–53, 87 S.Ct. at 1517–18; *Nevada ex rel. Loux v. Herrington,* 777 F.2d 529, 535 (9th Cir.1985). The cost of compliance with the Nevada regulation is not particularly great, but the penalty for noncompliance is disqualification, and the union itself may be penalized if it allows disqualified employees to continue to perform their union duties. Reg. 19.050.3; Nev.Rev.Stat. § 463A.250.

Where the agency has threatened enforcement, the actual commencement of administrative enforcement proceedings is not necessary. *Pacific Gas & Elec. Co.,* 461 U.S. at 201, 103 S.Ct. at 1720. Thus, the facial challenge to the reporting and disclosure requirements of the regulatory system is ripe for review.

Whether the provisions of Chapter 463A and Regulation 19, as applied, are preempted is not ripe for review. The Commission has neither ruled on the applicability of the regulations to these particular individual employees nor imposed any sanctions on the union.

## V.

■ The appellants claim that the overall regulatory system provided for in Chapter 463A and Regulation 19 is preempted completely by the NLRA and LMRDA (1) because the state reporting and disclosure requirements for union personnel do not apply equally to an employer's labor relations personnel and (2) because the regulation is not limited just to local union personnel. They acknowledge that the Supreme Court in its opinion in *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union,* 468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984), recognized an exception to the preemptive effect of those statutes, but contend that a later enactment by Congress as an amendment to the LMRDA, 29 U.S.C. § 524a, further restricts the exception to the overall preemption. The State, on the other hand, argues that Section 524a of the LMRDA is an enabling statute, concerning control of racketeering and not intended to have any preemptive effect.

■ State law is preempted by federal law if Congress explicitly mandated the preemption, or indicated an intent to occupy the field and to displace all state laws on the subject, or if the state law actually conflicts with federal law. *Brown,* 468 U.S. at 501, 104 S.Ct. at 3185. A conflict exists when it is impossible to comply with both the federal and state regulations or when the state law is "an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress." *Id.* We find no mandate, no intent to displace all state laws, and no conflict here.

Preemption of state regulation of union officials stems from Section 7 of the NLRA, which protects the right of employees to choose their own collective bargaining representatives. 29 U.S.C. § 157. Section 7, however, "does not exclude every state policy that may in fact restrict the complete freedom of a group of employees to designate" their representatives. *De Veau v. Braisted,* 363 U.S. 144, 152, 80 S.Ct. 1146, 1151, 4 L.Ed.2d 1109 (1960). Congress clearly "intended to preserve *some* room for state action concerning the responsibilities and qualifications of union officials." *Brown,* 468 U.S. at 506, 104 S.Ct. at 3188. The LMRDA, which was enacted in 1959 "to address the growing problems of racketeering, crime, and corruption in the labor movement," imposes qualification requirements on union officials and expressly disclaims any intent to preempt state regulation of union officials. *Id.* at 505 & n. 10, 104 S.Ct. at 3187 & n. 10; *see* 29 U.S.C. §§ 504(a), 523(a). States may adopt different and more stringent qualification requirements for union officials, at least where they are confronted with the public evils of crime, corruption and racketeering, *Brown,* 468 U.S. at 507–08, 104 S.Ct. at 3188–89. New Jersey regulations that required registration of local union officials and provided for disqualification for noncompliance were upheld in *Brown.* The Court noted that the New Jersey statute was

> part of [a] comprehensive program[ ] designed to "vindicate a legitimate and compelling state interest ... in combating *local* crime.... In the absence of a more specific congressional intent to the contrary, we therefore conclude that New Jersey's regulation of the qualifications of casino industry union officials does not actually conflict with § 7 and so is not pre-empted by the NLRA.

468 U.S. at 509, 104 S.Ct. at 3189 (citations omitted) (emphasis added).

## A.

After *Brown* was decided, Congress enacted section 524a of the LMRDA. The appellants argue that section 524a, which was added to the LMRDA in 1984, requires that any state regulation of union personnel must apply equally to an employer's labor relations personnel. Because the Nevada disclosure requirements applicable to union personnel are mandatory, but the regulation of employers' labor relations personnel is left to the discretion of the Commission, the appellants contend that the law is contrary to section 524a and thus preempted.

This is a case of first impression; we have found no case law interpreting section 524a, and the parties have pointed to no legislative history illuminating section 524a, which provides:

> **§ 524a. Elimination of racketeering activities threat; State legislation governing collective bargaining representative**
>
> Notwithstanding this or any other Act regulating labor-management relations, each State shall have the authority to enact and enforce, as part of a comprehensive statutory scheme to eliminate the threat of pervasive racketeering activity in an industry that is, or over time has been, affected by such activity, a provision of law that applies equally to employers, employees, and collective bargaining representatives, which provision of law governs service in any position in a local labor organization which acts or seeks to act in that State as a collective bargaining representative pursuant to the National Labor Relations Act [29 U.S.C.A. § 151 et seq.], in the industry that is subject to that program.

29 U.S.C. § 524a.

Section 524a was enacted as part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, § 2201, 98 Stat. 2192 (codified at 29 U.S.C. § 524a). It is apparent that Congress has, in section 524a, expressed its intent to permit state regulation of union personnel in the situation involved in the *Brown* opinion. The question is whether it was Congress's in-

tent to acknowledge, by a specific statutory reference, that the type of regulation involved in *Brown* was not preempted but, indeed, was specifically authorized, or whether it was Congress's intent to add an additional qualification. In *Brown*, the comprehensive regulatory system applied to both the employer and the union, although not with parallel requirements for each. The House Conference Report on the bill does not indicate that section 524a was intended to make any revision in the law as interpreted by *Brown*. H.R.Rep. No. 98–1159, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Adm. News 3182, 3710, 3714–15. Its enactment as a part of the Comprehensive Crime Control Act would indicate that the focus was on crime control, not on tightening preemptive restrictions.

The key inquiry here is the meaning of the clause "a provision of law that applies equally to employers, employees, and collective bargaining representatives." The thrust of the statute is, as the title indicates, the elimination of the threat of racketeering activities and permitting state legislation governing collective bargaining in order to do so. Section 524a was enacted October 12, 1984, just three months after the Supreme Court's opinion in *Brown*. That opinion was a four-to-three decision with two judges not participating. The legislation appears to be a congressional ratification of the four-judge majority opinion in *Brown*, acknowledging the appropriateness of state legislation in the area, rather than an added qualification. The statute makes it clear that Congress does not intend to preempt completely all regulation concerning the persons who may provide service to unions engaged in collective bargaining in certain industries. The emphasis is on having a complex regulatory system that applies to employers and employees and collective bargaining representatives. It is obvious that there cannot be completely parallel provisions applicable to each; rather, state discretion must be exercised in order to accomplish the objective of eliminating the threat of pervasive racketeering activities.

Nevada does have a complex regulatory scheme that allows the Commission to determine the "suitability" of anyone associated with an employer in the gaming industry, including labor relations personnel. The Commission has broad discretion to require licensing of a range of people involved in any gaming operation. The Commission clearly has the power to impose restrictions on employers' labor relations personnel that are far more onerous than those that apply to union personnel.

Gaming operators, officers and directors of corporate gaming licensees, and general and limited partners of partnership licensees must be licensed by the state. Nev. Rev.Stat. §§ 463.160, 463.530, 463.569. The Commission may require others who are connected with licensees to be licensed if, "in the opinion of the commission," they have "the power to exercise a significant influence over the licensee's operation of a gaming establishment." Nev.Rev.Stat. § 463.165(*l*).

With regard to the employers and employees, a licensed gaming establishment is required to file a report listing any executive, employee, or agent of the gaming licensee having the power to exercise a significant influence over the decisions concerning any part of the operation of the gaming licensee. Reg. 3.110. The regulation also provides for reporting of specific enumerated employees who are deemed to be important to the gaming operation or who exercise significant control over decisions. Reg. 3.100. Among those specifically enumerated are all individuals who have authority to hire or terminate casino personnel, all individuals who have authority to supervise or direct a shift of any gaming security activity, those who are involved in extending credit, and those who are involved in the counting of cash and record keeping of revenues. Reg. 3.100.-1(a)–(i). In the exercise of the expertise of the Commission, those employees are the ones who are deemed to be essential for the control of gaming in the State to prevent unlawful racketeering activities.

In addition, the Nevada statutes provide authority for the Commission to regulate

persons furnishing services or property or doing business with gaming establishments and to terminate such relationships. Nev. Rev.Stat. § 463.167. The same is true with persons conducting tournaments or contests in association with gaming establishments. Nev.Rev.Stat. § 463.169.

In the enactment of Chapter 463A of the Nevada Revised Statute, the legislature made certain findings. These findings are set forth in Nev.Rev.Stat. § 463A.010.

**463A.010 Legislative findings and declaration.**

The legislature finds and declares that:

1. The relationship which exists between a labor organization and the employees whom it represents in collective bargaining is such that it may significantly affect the conduct of a gaming operation by an employer.

2. In the past, attempts have been made by persons whose background is not suitable for association with licensed gaming to gain positions of control in labor organizations representing gaming casino employees in this state.

3. In order to carry out the declared policy of this state that licensed gaming be conducted freely and honestly, and in order to protect the welfare of the employees of the gaming industry which is fundamental to the economy of this state, it is necessary to determine the suitability of any person who performs certain significant functions in the representation of gaming casino employees in this state.

The provisions of that chapter and Regulation 19 that implements it are not an exact parallel of the provisions relating to the employers and employees; however, the emphasis is the same: to identify those persons who have a significant impact on gaming activities. It is obvious that there cannot be an exact parallel, because the entities are different and the impact of their personnel on gaming and potentially on racketeering activities are not the same. The principal objection of the appellants is that the labor relations personnel of the employers are not currently specifically required to provide the personnel reporting information to the Board. However, the Commission may exercise its discretion to require any key employee of a licensed gaming establishment to do so. The appellants contend that this does not meet the requirements of section 524a for the equality of the application of the "provision of law." The State argues that although there is no specific provision expressly authorizing the Commission to disqualify employers' labor relations personnel, its power under section 463.310 to revoke, suspend, limit, or condition licenses and suitability determinations of licensees and their personnel is equivalent to the provisions applicable to the collective bargaining representatives of the employees.

In administering a comprehensive statutory system to eliminate the threat of pervasive racketeering activities in gaming, the State must be allowed discretion, within reasonable limits, to determine the power and influence that various employees and persons associated with gaming can have on the industry and, in turn, on the potential for racketeering activities. We do not view section 524a as setting a requirement that provisions relating to employers, employees, and collective bargaining representatives must be exactly parallel; this determination must necessarily be left to the discretion of the State administering the comprehensive regulatory system. What is required is that the statutes and regulations provide a reasonable basis for identifying the persons that have a significant impact on the gaming industry, whether employers, employees, or collective bargaining representatives, and for applying the reporting and disclosure requirements to those persons with the objective of diminishing the threat of racketeering activity.

Persons having different relationships to gaming pose different threats. For example, those who own or are employed by gaming establishments could contribute to racketeering by illegally diverting cash to racketeers through false accounting, manipulating gaming devices or card games, false counting of cash, and similar activities. Those providing services or property

to gaming establishments could provide a mechanism for diverting gaming proceeds to racketeers. Key personnel of unions representing gaming establishments could, through threats of labor unrest or increasing or reducing labor demands, extort illegal payments to racketeers. The ingenuity of racketeers is unlimited. The potential of all persons in important positions relating to gaming to contribute to racketeering is best left in the hands of the state gaming authorities to evaluate. We do not interpret the general language of section 524a to dictate otherwise.

The application of the regulations, of course, cannot place an unreasonable burden on collective bargaining representatives, or one that is unrelated to the basic objective of eliminating racketeering. Within these bounds, the state agency must have the discretion to determine those persons who perform significant functions in the gaming industry and the type of reporting and disqualification measures that are necessary to eliminate the threat of racketeering activity.

We conclude that the Nevada statutory system on its face is not inconsistent with federal labor policy and is not an obstacle to the accomplishment of the purposes of section 524a. This does not foreclose a future challenge that the regulation, as applied, does not result in the substantial equality prescribed by section 524a.

### B.

Appellants further contend that the international unions and their employees are beyond the scope of any proper state regulation because the exception to preemption provided for in section 524a is limited to local union personnel. We disagree. Section 524a is concerned with "service in any position in a local labor organization." The LMRDA is aimed at more effective control over "abuses at the local level." *Brown,* 468 U.S. at 506, 104 S.Ct. at 3188. We hold that "service in any position in a local labor organization" includes those who provide service for the local labor organization, whether they are actually employees of the local organization or merely are engaged by the local organization to perform the service. This

includes international union employees who provide such service.

The individual appellants in this case live in Nevada and perform service to the local unions in their representation of gaming employees. Regulation of them is not barred by section 524a or by section 7. Appellants have raised state law questions of whether these employees of the International Union are governed by the provisions of Chapter 463A and whether the Commission has exceeded its authority in applying the statute to international union employees. These questions can most appropriately be addressed in the Commission hearings if proceedings against these employees are commenced and, in turn, by the Nevada courts if rulings of the Commission are contested.

### VI.

Taylor and Atkinson contend that the reporting and disclosure requirements of Regulation 19 violate their First Amendment speech and associational rights. The district court held that the First Amendment claim was not ripe because the individual plaintiffs had continued to perform their duties and had not been threatened with disqualification because of any activity allegedly protected by the First Amendment. The court concluded that resolution of this issue would be greatly aided by a factual record, such as the types of activity actually infringed upon and the bases for any such disqualification. We hold that the facial challenge to the registration requirement is ripe for review and is not a prior restraint. However, any further First Amendment challenge to the Nevada law, as applied to the activities of the plaintiffs, is not ripe for review.

The mere requirements of Regulation 19.030–19.050 do not violate Taylor's and Atkinson's First Amendment rights. The disclosure requirements are substantially related to the compelling governmental interests in protecting the free and honest conduct of gaming and the welfare of casino employees, and they are narrowly tailored to affect only a limited group. On this record, we cannot conclude that the burden on Taylor and Atkinson outweighs the interests of Nevada. *See Local 1814,*

**1518**

*Int'l Longshoreman's Ass'n, AFL–CIO v. Waterfront Comm'n,* 667 F.2d 267 (2nd Cir.1981) (upholding the New York Port Waterfront Commission's authority to compel disclosure of the identity of contributors to a union). The importance of controlling racketeering activities recognized in section 524a and in the Supreme Court's decision in *Brown* provides an adequate basis for the reporting and disclosure requirements of the State. There is no attempt to control the content of any speech or the nature of any organizational activity by a prior restraint. Rather, the import of the regulatory system is to identify the backgrounds of the persons who are involved in the key positions affecting the gaming industry.

### VII.

We hold that the reporting and disclosure requirements of the Nevada gaming control statutes and regulations are not on their face preempted by federal law; nor do they violate the plaintiffs' First Amendment rights. We affirm the decision of the district court to dismiss the remainder of the action on the ground of ripeness. Each party shall bear its own costs.

AFFIRMED in part and REVERSED in part.