COX COMMUNICATIONS PCS, L.P.,
A Delaware limited partnership,
Plaintiff,

v.

CITY OF SAN MARCOS, a California municipality; F.H. Smith, in his capacity as Mayor of the City of San Marcos; Pia Harris, in her capacity as Vice–Mayor of the City of San Marcos; Hal Martin, in his capacity as a councilmember of the City of San Marcos; Mark J. Rozmus, in his capacity as a councilmember of the City of San Marcos; Lee B. Thibadeau, in his capacity as a councilmember of the City of San Marcos, Defendant.

Civ. No. 01CV2304–B(AJB).

United States District Court,
S.D. California.

April 18, 2002.

Juanita R. Brooks, Daniel T. Pascucci, Andrew D. Skale, Fish & Richardson, P.C., San Diego, CA, for plaintiffs.

Kevin P. Sullivan, Judith Hartwzig, Lounsbery, Ferguson, Altona & Peak, LLP, Escondido, CA, for defendants.

## GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION TO DISMISS

BREWSTER, Senior District Judge.

### I. Introduction and Background

Plaintiff Cox Communications PCS, L.P. (d.b.a. Sprint PCS) ("Sprint") is a provider of wireless telecommunications service throughout the San Diego area, including the City of San Marcos ("the City"). On April 20, 2001, Sprint sent a letter to the City requesting permission to use the public rights-of-way to install various facilities

at three sites in the City. The facilities include wireless cell devices that attach to electrical poles and boxes at the base of the poles to provide power to the wireless transmission units. On August 2, 2001, the City indicated that Sprint could not use the public rights-of-way without first obtaining a Conditional Use Permit ("CUP").

The process for receiving a CUP from the City is contained in Title 20 of the San Marcos Municipal Code. To obtain a permit, a party must file an application with the City that includes a complete plan, description of the property, the proposed use, satisfactory evidence that the applicant will begin construction within six months of receiving the permit, and a fee of $3,476. San Marcos Municipal Code § 20.96.170. A public hearing is required. §§ 21.104.070, 20.104.075, 20.104.080. The applicant must show that its proposed use of the rights-of-way will not be "materially detrimental to the public health, safety, or welfare or injurious to the property or improvement in such vicinity and zone in which the property is located" and "will not adversely affect any master or precise plan adopted pursuant to law." § 20.96.170. The City retains discretion to grant or deny permits. § 20.96.040 ("Use permits may be granted upon such conditions . . . as shall deem to be reasonable and necessary or advisable under the circumstances so that the objectives of this ordinance shall be achieved."); § 20.96.190 ("Use permits may be granted for such period of time and upon such conditions and limitations as may be deemed appropriate."). Violators of the ordinance may be punished by fine and/or imprisonment. §§ 20.112.20, 20.112.30, 20.112.040. Finally, if a permit is granted, the City may require a bond to insure performance and furnish security. § 20.96.050.

On October 1, 2001, Sprint informed the City that it believed the CUP process, as contained in the parts of the San Marcos Ordinance described above, violated Sprint's federal and state rights. On or about November 16, 2001, the City and Sprint met to discuss Sprint's proposed projects and right to install such facilities. The parties did not agree whether the City could require Sprint to obtain a CUP before it used the rights-of-way. On November 26, 2001, Sprint sent another letter to the City requesting that the City accept Sprint's applications and issue encroachment permits without requiring Sprint to undergo the CUP process. Although the letter asked for a response within ten days, the City has not replied to Sprint's request.

On December 14, 2001, Sprint filed this complaint against the City, the mayor, the vice-mayor, and various city council members, which contains fourteen causes of action as follows: (1) violation of 47 U.S.C. § 332(c)(7)(B)(i)(I); (2) violation of 47 U.S.C. § 253; (3) violation of 47 U.S.C. § 332(c)(7)(B)(i)(II); (4) violation of 47 U.S.C. § 332(c)(7)(B)(ii); (5) violation of 47 U.S.C. § 253(discriminatory regulation); (6) violation of California Public Utilities Code § 7901.1; (7) preemption; (8) violation of 42 U.S.C. § 1983; (9) declaratory judgment; (10) writ of mandamus; (11) injunctive relief; (12) intentional interference with contract; (13) ultra vires conduct in excess of state authority; and (14) ultra vires conduct in excess of municipal authority. The defendants seek to dismiss all of Sprint's causes of actions for failure to state a claim. Furthermore, the defendants ask the Court to dismiss the 1st, 2nd, 3rd, 4th, 5th, 7th, 8th, and 9th causes of action because they are not ripe. Finally, the defendants argue that the Court should decline jurisdiction over Sprint's state law claims.

## II. Summary of the Law

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6)

tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed with prejudice if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). The court need not, however, accept every allegation in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992) (citations omitted).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (*citing Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984)).[1] "However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios*, 896 F.2d at 1555 n. 19 (*citing Amfac Mtg. Corp. v. Arizona Mall of Tempe*, 583 F.2d 426 (9th Cir.1978)). In addition, a court may, on a motion to dismiss, take judicial notice of facts outside the pleadings as allowed pursuant to Federal Rule of Evidence 201. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986) (abrogated on other grounds by *Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991)).

## III. Analysis

**First and Third Causes of Action:** *Violation of 47 U.S.C. § 332(c)(7)(B)(i)(I) and 47 U.S.C. § 332(c)(7)(B)(i)(II)*

■ Sprint alleges two causes of action based on 47 U.S.C. § 332(c)(7), which defines the local governments' power to make decisions over local cell sitings. That statute says, in relevant part:

Preservation of local zoning authority

A. General Authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A state or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct,

---

**1.** Pursuant to defendants' request, the Court takes judicial notice of the San Marcos Municipal Code, San Marcos Ordinance 63–9, and San Marcos Ordinance 63–10.

or modify personal wireless services facilities shall be in writing and supported by substantial evidence contained in the written record.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

In its 1st and 3rd causes of action, Sprint asserts the defendants have violated §§ 332(c)(7)(B)(i)(I) and 332(c)(7)(B)(i)(II), respectively. The defendants correctly respond these causes of action fail to state a claim because the defendants have not yet made a decision on whether Sprint can use the rights-of-way.

These sections of the telecommunications act only allow for a cause of action if the local authority has made a *decision.* This rule is made clear by § 332(c)(7)(B)(v), which specifically grants a cause of action to those who have been "adversely affected by *any final action* " of a local government. 47 U.S.C. § 332(c)(7)(B)(v) (emphasis added). Sprint admits this point. Sprint, Reply, 2 ("[S]ection 332 applies to . . . [siting] *decisions and failures to act on requests for . . . [siting] decisions* whereas section 253 also applies to general policies that have the effect of prohibiting the provision of telecommunication services.") (emphasis added). Sprint fails to cite, and the Court has been unable to find, any case brought under §§ 332(c)(7)(B)(i)(I) or 332(c)(7)(B)(i)(II) which did not involve a final action or a decision by a local government or agency.

This interpretation requiring a "decision" or "final action" is consistent with the other provisions of the FTA. Section 332(c)(7)(A) says that "nothing in the chapter" should affect the local government in its "decisions" regarding local cell sites. Also, subsection (iii) says how the "decisions" should be in writing and supported by substantial evidence. Furthermore, any interpretation of §§ 332(c)(7)(B)(i)(I) and 332(c)(7)(B)(i)(II) that allows applicants to challenge the laws, rather than decisions, would be superfluous because 47 U.S.C. § 253 already gives applicants this option. Where 47 U.S.C. § 253 provides a cause of action against *local regulations,* section 332 gives a cause of action against *local decisions.*

In this case, because the defendants have not rejected Sprint's application for an excavation permit or a CUP, they have not taken any final action. Because no *decision* or *final action* has been made on Sprint's request, the company has failed to state a cause of action under §§ 332(c)(7)(B)(i)(I) and 332(c)(7)(B)(i)(II).

The Court dismisses the 1st and 3rd causes of action.

**Fourth Cause of Action:** *Violation of § 332(c)(7)(B)(ii)*

■ Section 332(c)(7)(B)(ii) requires the City to respond to any request for a permit "within a reasonable time after the request is duly filed . . . taking into account the nature and scope of such request." Sprint argues that although it has not applied for a CUP, it has properly filed for an excavation permit and has not received a response for more than 10 months, giving it a cause of action under this provision.

If the facts in the complaint were true, Sprint could possibly show that the defen-

dants have delayed for an unreasonable time in violation of § 332(c)(7)(B)(ii). This claim presents factual issues to determine whether the City's alleged delay was unreasonable, considering the "nature and scope of such request."

The Court denies defendants' motion to dismiss this claim.

**Second Cause of Action:** *Violation of 47 U.S.C. § 253 (Prohibition of Telecommunications Service)*

■ In Sprint's second cause of action, it asserts the defendants have violated 47 U.S.C. § 253, which prevents local governments from passing ordinances which prohibit telecommunications services, unless such ordinances reasonably "manage" the rights-of-way. This section states:

(a) In general: No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority: Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with Section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local governmental authority: Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

*Id.* The defendants argue this cause of action should be dismissed because this claim is not ripe for review since the City has not made a decision or taken a final action regarding Sprint's request to use the rights-of-way.

■ Although a final action or decision is necessary to file a claim under sections 332(c)(7)(B)(i)(I) and 332(c)(7)(B)(i)(II), neither is required under section 253. The underlying rationale behind the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). To determine if a claim based on section 253 of the FTA is ripe, courts will first engage in a constitutional inquiry to consider whether a case or controversy exists, *see City of Auburn v. Qwest Corp.,* 260 F.3d 1160, 1170 (9th Cir.2001), then will consider (1) whether the issues are fit for judicial decision, and (2) whether the parties will suffer hardship if the court declines to resolve the issue. *See Abbott Labs.,* 387 U.S. at 148, 87 S.Ct. 1507.

■ The ripeness question has a "constitutional component rooted in the 'case or controversy' requirement of Article III." *Auburn,* 260 F.3d at 1171. This part of the ripeness determination forces the court to decide whether the plaintiff " 'faces a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement' or, by contrast, if the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *Id.* (*citing Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). Furthermore, if "promulgation of the challenged regulations presented plaintiffs with the immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation," the issue is ripe. *Id.*

(*citing Reno v. Catholic Soc. Serv. Inc.*, 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)).

In this situation, Sprint is sustaining a direct injury. Sprint cannot place its facilities at various points throughout the City because the defendants are enforcing this allegedly unconstitutional ordinance against the service provider. Sprint has provided evidence that it is losing goodwill and customers because its entry into the market has been delayed by this permit process. Furthermore, to paraphrase the Court in *Reno*, Sprint faces the dilemma of either complying with the CUP permit process or "risk[ing] serious penalties for violation." *Reno*, 509 U.S. at 57, 113 S.Ct. 2485. This case satisfies the case or controversy requirement.

The Court must also determine if the claim satisfies the two-prong test laid out in *Abbott Labs.*, 387 U.S. at 148, 87 S.Ct. 1507. If the controversy is a "purely legal one," it is fit for a judicial decision. *Id.* at 149, 87 S.Ct. 1507. The issue before the Court is a straightforward question of law: does the local ordinance violate the FTA? Furthermore, the parties will suffer hardship if the Court declines to consider the issue; Sprint has shown that each day it is not able to install its antennas, because it has to follow an allegedly unconstitutional ordinance, it loses customers, goodwill, and potential profits. This issue is ripe for review.

The decision that the claim is ripe is consistent with what other courts have held. In *AT & T Communications v. City of Austin*, 975 F.Supp. 928, 937–38 (W.D.Tex.1997), the court held that in a similar situation:

> This case is ripe for adjudication .... It is the existence of the Ordinance itself that gives rise to the plaintiff's claims. Furthermore, a determination of AT & T's claims simply requires an examination of the Ordinance in light of federal and state law; no further factual development is required. Finally, the harm to AT & T in this case is present and real. It goes without saying that delayed entry into the local telephone service market can have profound effects on the success of AT & T's venture .... Considering the ordinance's threat of criminal penalties and fines, AT & T was left with the Hobson's choice of either applying for a municipal consent or challenging the Ordinance in an appropriate forum. In short, AT & T's failure to apply for municipal consent is irrelevant to the merits of this case, and the plaintiff should be delayed no more in its ability to seek relief under the Act.

*See also Auburn*, 260 F.3d at 1170–73 (holding that a challenge to a permit process based on § 253 was ripe for review although the plaintiff had not applied); *Qwest Communications v. Berkeley*, 146 F.Supp.2d 1081, 1102 (N.D.Cal.2001) (same); *City of Dallas*, 8 F.Supp.2d 582, 595 (holding that "it is not necessary for AT & T to expose itself to [criminal penalties] to be entitled to challenge the City's requirements. It is also not necessary ... for AT & T to comply with the city's onerous, and potentially illegal franchise requirements as it awaits a decision on the merits."); *Peco Energy Co. v. Township of Haverford*, 1999 WL 1240941, 1999 U.S. Dist. LEXIS 19409 (E.D.Pa.1999).

The second cause of action stating that the San Marcos ordinance violates 47 U.S.C. § 253 states a claim upon which relief can be granted and is ripe for review. Defendants' motion to dismiss this claim is denied.

**Fifth Cause of Action:** *Violation of 47 U.S.C. § 253—(Discriminatory Regulation of Public Right of Way)*

■ Sprint alleges the defendants have violated section 253 because they have regulated telecommunications service provid-

ers in a discriminatory manner. Section 253(c) states that municipalities can "manage the public rights-of-way or . . . require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis . . ." Sprint maintains that the defendants, through local ordinances, have given preferential treatment to San Diego Gas & Electric ("SDG & E") and Metricom, Inc.

The defendants respond that this cause of action fails to state a claim because the City has not given any special treatment to Metricom, Inc., or SDG & E. The complaint, however, alleges facts that show the City has treated SDG & E and Metricom, Inc. differently. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986) (noting how the Court must assume the facts alleged in the complaint are true).

The defendants have failed to show the Court why this cause of action should be dismissed. The motion to dismiss this claim is denied.

**Seventh Cause of Action:** *Preemption*

Sprint files a cause of action for federal preemption of the San Marcos ordinance. Preemption, however, does not state a cause of action, but is a *reason* why another cause of action should succeed. In Sprint's second cause of action, it maintains the San Marcos ordinance violates section 253 of the FTA. Simply violating a federal statute, however, would have little relevance for the Court unless the federal law *preempted* the local ordinance. Because preemption is subsumed in the second cause of action, it fails to state a separate claim.

The Court dismisses the seventh cause of action.

**Eighth Cause of Action:** *Violation of 42 U.S.C. § 1983*

Sprint asserts that the defendants violate 42 U.S.C. § 1983, which requires Sprint to prove: (1) that the defendants were acting under color of state law when (2) the defendants committed conduct that deprived Sprint of a right, privilege or immunity guaranteed by the Constitution or the laws of the United States. *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Sprint maintains the City ordinance affects its (1) constitutional rights and its (2) federal rights as defined by 47 U.S.C. § 253.

### § 1983—Claim—Constitutional Rights

Sprint argues that it has a contract to erect telecommunications facilities within the California public rights-of-way. Complaint, ¶ 72. Section 7901 of the California Public Utilities Code states, in part, that "telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road of highway." Cal. Pub. Util.Code. § 7901. According to Sprint, to secure a state franchise, it needs only to construct and maintain telephone facilities in the rights-of-way. The California courts have recognized that any franchise pursuant to § 7901 is a vested right protected by the federal constitution. In *Postal Telegraph–Cable Co. v. Railroad Comm'n,* 200 Cal. 463, 472, 254 P. 258 (1927), the court stated:

> The rights acquired by the Telegraph Company by accepting and availing itself of the provisions of [§ 7901] are vested rights which the constitutions, both state and federal, protect. They cannot be taken away by the state, even though the legislature should repeal the section, or by the people through a constitutional provision.

*See also County of Los Angeles v. Southern Cal. Telephone Co.,* 32 Cal.2d 378, 385,

196 P.2d 773 (1948) ("The grant, resulting from the acceptance of the state offer, constituted a contract between the Telegraph Company and the state, secured by the constitution of the United States against impairment by any state legislation."). Relying on these cases, Sprint maintains that the City, acting under the color of state law, deprived it of a right guaranteed by the contracts clause of the Constitution.[2]

Sprint's argument fails. Section 7901 constitutes a contractual offer by the states, acceptance of which takes place when the corporation builds and operates facilities in the rights-of-way. *See Pacific Tel. & Tel. Co. v. Los Angeles*, 44 Cal.2d 272, 276, 282 P.2d 36 (1955) ("This offer is accepted in its entirety by the construction, maintenance and operation of telegraph or telephone lines within the state."); *Western Union Telegraph Co. v. Hopkins*, 160 Cal. 106, 118, 116 P. 557 (1911) ("[T]he exclusive occupation by a company of portions of public highways for the authorized purposes is an acceptance of it of the offered franchise."). Sprint seems to suggest that once it builds some telephone lines somewhere in the state of California, it has a contractual right to use the public rights-of-way *anywhere in the state*. If this were accurate, this would mean a corporation could build a single telephone line and consequently obtain an indefinite contract, protected by the federal constitution, to construct and maintain telephone lines throughout the entire state. The correct interpretation of § 7901, however, is that telephone corporations have a contract with the state on the lines *that they have already built, not the ones they want or may build in the future*.

In this case, Sprint has not yet constructed any facilities in the City, and thus as not yet accepted the offer from the state, and no contract exists. Because no franchise yet exists for Sprint in the City, the San Marcos ordinance does not interfere with any vested contractual right protected by the Constitution.

Furthermore, Sprint has failed to allege any facts showing that the City ordinance violates its Fifth and Fourteenth Amendment rights. Although Sprint may have a right protected by a federal statute, *see infra*, the statutory right in this case is not a *property or liberty right* protected by the Constitution. *See Blessing*, 520 U.S. at 329, 117 S.Ct. 1353 (holding that a § 1983 cause of action can exist for a violation of a constitutional right *or* a federal right); *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (noting differences between statutory rights and constitutional rights); *United States v. Ruelas*, 106 F.3d 1416, 1418 (9th Cir.1997) (same).

Sprint's § 1983 cause of action that the City ordinance violates the federal constitution is dismissed.

### § 1983—Claim—Federal Right

Sprint also asserts a § 1983 cause of action maintaining that the defendants have violated the company's federal rights as defined by 47 U.S.C. § 253. If a plaintiff's § 1983 cause of action is not based on a constitutional violation, the plaintiff must assert the violation of a *federal right*, and not merely a federal statutory violation. *Blessing*, 520 U.S. at 340, 117 S.Ct. 1353. To determine if 47 U.S.C. § 253 creates a substantive federal right, the Court must consider (1) whether Congress intended the FTA to benefit the

2. California Public Utilities Code § 7901 applies to Sprint. The statute applies to any telephone corporation that provides wireless or landline services. *See* Cal. Pub. Util.Code §§ 234(a); 233.

plaintiff; (2) whether the right allegedly protected by the FTA is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) whether the FTA clearly imposes a binding obligation on the states or municipalities. *Id.* at 329, 117 S.Ct. 1353.

Clearly, section 253 satisfies the first two prongs. The intent of section 253 was to benefit the plaintiff by limiting the authority of local governments over telecommunications service providers. *See Omnipoint Communications, Inc. v. Scranton,* 36 F.Supp.2d 222, 227 (M.D.Pa.1999). Furthermore, enforcing section 253 is neither amorphous nor vague and has frequently been interpreted and enforced by the courts. *See e.g., Auburn,* 260 F.3d at 1175–1179; *Berkeley,* 146 F.Supp.2d at 1093–1102.

More controversial is whether section 253 imposes a binding obligation on the municipalities. In *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353, the Court held the law must "unambiguously impose[ ] a binding obligation on the states." Provisions which indicate "no more than a confessional preference—at most a 'nudge in the preferred direction' are not intended to, and therefore, according to the Supreme Court cannot rise to the level of an enforceable right." *Wright v. Roanoke Redevelopment & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (*quoting Pennhurst State Sch. & Hosp.,* 451 U.S. 1, 19, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)). The language, however, of § 253(a) clearly provides a congressional command more powerful than a suggestion or a nudge.

When a statute creates a federal right, a "rebuttable presumption that the right is enforceable under § 1983" exists. *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353. This presumption will be rebutted if Congress explicitly or implicitly foreclosed a remedy under § 1983. *Id.* The City has failed to raise any arguments rebutting this presumption.

The court dismisses § 1983 claim as it relates to Sprint's constitutional claim, but denies defendants' motion to dismiss as it relates to Sprint's federal rights claim.

## Ninth Cause of Action—*Declaratory Judgment*

The defendants contend that Sprint's ninth cause of action, seeking declaratory judgment, is not ripe.

The Court, however, has already held that the causes of action based on § 253 are ripe. Furthermore, the Ninth Circuit has held that declaratory judgment is appropriate where local regulations may violate section 253. *Auburn,* 260 F.3d at 1172 (holding that local regulations that violate § 253 create the "dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate").

The defendants' motion to dismiss this cause of action is denied.

## Tenth Cause of Action—*Writ of Mandate*

Sprint asks for a writ of mandate because the City has violated various sections of 332(c)(B)(7). "Mandamus relief may be available, however, where a public official has violated statutory or regulatory standards delimiting the scope or manner in which official discretion can be exercised." *AlliedSignal, Inc. v. City of Phoenix,* 182 F.3d 692, 697 (9th Cir.1999). Although the local government has discretion to grant or deny permit applications, this discretion is limited by the FTA. As a result, the Court, if necessary, could grant mandamus relief if the defendants were found to have violated § 332(c)(7)(B)(ii) by delaying for an unreasonable amount of time.

The Court denies the defendants' motion to dismiss this claim.

**Eleventh Cause of Action**—*Injunctive Relief*

■ Injunctive relief, like damages, is a *remedy requested by the parties, not a separate cause of action.* *See* BLACK'S LAW DICTIONARY 201 (1979) (defining cause of action as "[a] situation or state of facts which would entitle party to sustain action and give him right to seek a judicial remedy in his behalf.").

Since Sprint has correctly sought an injunction as part of its remedy, *see* Complaint, Prayer for Relief, ¶ 1, the Court dismisses the eleventh cause of action.

**Twelfth Cause of Action**—*Intentional Interference with Contract*

Sprint maintains that because it installed telecommunications facilities in the California rights-of-way, Sprint and the state of California have entered into a binding contract giving Sprint an unrestricted right to install telecommunications facilities in state's City's rights-of-way. Sprint further contends that defendants knew about these rights and prevented Sprint from performing its obligations, resulting in intentional interference with contract.

■ The elements which a plaintiff must plead to state a cause of action for intentional interference with contract in the state of California are a(1) a valid contract between the plaintiff and a third party; (2) defendants' knowledge of this contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Quelimane Co. v. Stewart Title Guaranty Co.,* 19 Cal.4th 26, 55, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998). In this case, Sprint has failed to show that it had a valid contract with the state of California regarding the rights-of-way in the City (*see supra,* describing 8th cause of action). Because Sprint was unable to satisfy the first ele-

ment, the Court dismisses this cause of action.

**Fourteenth Cause of Action**—*Ultra Vires Conduct—Exceeding the Authority of Municipal Code*

In Sprint's fourteenth cause of action, it argues that the defendants have exceeded their authority as defined in the San Marcos Municipal Code. Sprint alleges this cause of action "in the event the San Marcos Municipal Code is subject to an interpretation that exempts Sprint from the requirements addressed above." Complaint, ¶ 103.

The complaint, however, fails to allege facts that show the San Marcos Municipal Code prohibits defendants from requiring a CUP. Furthermore, Sprint, in its oral arguments before the Court, said that it filed this cause of action to protect itself in the event that the defendants conceded that the local officials acted beyond their authority. The defendants, however, did not make this concession.

The Court dismisses this cause of action.

**State law claims**

■ Sprint files various causes of action requesting relief under state law (6th, 9th, 11th, and 13th causes of action). The defendants request the Court to decline supplemental jurisdiction over Sprint's state law causes of action. To decide whether the San Marcos ordinance violates state law, the Court will have to analyze various state statutes and orders, including the California Public Utilities Code §§ 7901, 7901.1, and PUC General Order 159A ("GO 159A").

Basically, California Public Utilities Code § 7901 gives the telephone corporations a broad right to use the rights-of-way, but California Public Utilities Code § 7901.1 and GO 159A define the authority of local governments to regulate these ar-

eas. No state or federal case has interpreted California Public Utilities Code § 7901.1 or GO 159A. Legislative history is sparse. If the Court were to exercise jurisdiction, it would have to interpret important state statutes and resolve difficult and novel issues of state law for the first time.

The Court declines to do so. *See* 18 U.S.C. § 1367(c)(1) (allowing district courts to decline supplemental jurisdiction if the claims raise novel or complex issues of state law); *Moor v. County of Alameda,* 411 U.S. 693, 716, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (district courts are given broad discretion in evaluating whether pendent jurisdiction is appropriate); *Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]t has been consistently recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."); *Medrano v. City of Los Angeles,* 973 F.2d 1499, 1506 (9th Cir. 1992) (holding that district court correctly "used its discretion so that it would [not] be called upon to resolve difficult issues of state law."). In *Berkeley,* the court declined to exercise jurisdiction over Qwest's state law claims, which involved California Public Utilities Code § 7901. *See Berkeley,* 146 F.Supp.2d at 1102.

The Court is aware of a competing principle that may warrant against declining jurisdiction. Courts, if possible, should avoid deciding constitutional issues. *See United States v. Serafini,* 167 F.3d 812, 815 (3d Cir.1999) ("Longstanding practice calls for federal judges to explore all non-constitutional grounds of decision before addressing the constitutional ones...."). In Sprint's second cause of action, it asks the Court to declare the local ordinance unconstitutional because it is preempted by federal law. The Fourth Circuit reversed a district court ruling because the lower court decided that a local ordinance was preempted by the FTA before determining whether state law invalidated it. *Bell Atlantic Maryland, Inc. v. Prince George's County,* 212 F.3d 863 (4th Cir. 2000).

In this case, however, there really is not a constitutional *issue.* The Ninth Circuit has said that "although preemption has its doctrinal base in the Constitution, the question is largely one of determining the compatibility of a state and federal statutory scheme. No constitutional issues of substance are presented." *Knudsen Corp. v. Nevada State Dairy Comm'n,* 676 F.2d 374, 377 (9th Cir.1982); *see also Hotel Employees and Restaurant Employees Int'l Union v. Nevada Gaming Comm'n,* 984 F.2d 1507, 1512 (9th Cir.1993) ("[P]reemption is not a constitutional issue."); *Berkeley,* 146 F.Supp.2d at 1083 (deciding that the local ordinance was preempted by the FTA without deciding whether the state law invalidated the local regulations). Despite the ruling in the Fourth Circuit, the Court declines jurisdiction over the state law claims.[3]

Sprint also attempts to save federal jurisdiction by framing its state law claims as federal claims. According to Sprint, the City ordinance impairs a contract Sprint has with the state of California, based on California Public Utilities Code § 7901, in violation of the federal constitution. This argument, however, is unavailing. As discussed earlier, Sprint does not have a "contract" to use the City's public rights-

---

**3.** The Court does not decline supplemental jurisdiction over the 12th and 14th causes of action because they do not raise complex and novel issues of state law. *See* 18 U.S.C. § 1367(c).

of-way and, thus, these state law issues never become federal claims.

The Court declines jurisdiction over Sprint's 6th and 13th causes of action in their entirety, and Sprint's 9th cause of action, as it relates to any state law claim.[4]

## IV. Conclusion

It is HEREBY ORDERED that:

Defendants' motion to dismiss the 1st, 3rd, 7th, 8th (as it relates to the constitutional claim), 11th, 12th, and 14th causes of action against all defendants is hereby GRANTED.

Defendants' motion to dismiss the 2nd, 4th, 5th, 8th (as it relates to the federal rights claim), 9th (as it relates to the federal claims), and 10th causes of action against all defendants is hereby DENIED.

The Court declines to exercise supplemental jurisdiction over the 6th, 9th (as it relates to the state law claims), and 13th causes of action against all defendants.

The Plaintiffs shall have 30 days to amend the complaint.

IT IS SO ORDERED.

---

4. The defendants' argument that Sprint cannot receive damages on its state law claims is dismissed as moot.