SPRINT TELEPHONY PCS, L.P., a Delaware limited partnership, and Pacific Bell Wireless, LLC, a Nevada limited liability company, dba Cingular Wireless, Plaintiffs,

v.

COUNTY OF SAN DIEGO, a division of the state of California; Greg Cox, in his capacity as a supervisor of the County of San Diego; Dianne Jacob, in her capacity as a supervisor of the County of San Diego; Pam Slater, in her capacity as a supervisor of the County of San Diego; Ron Roberts, in his capacity as a supervisor of the County of San Diego; and Bill Horn, in his capacity as a supervisor of the County of San Diego, Defendants.

No. 03CV1398–K (LAB).

United States District Court,
S.D. California.

Jan. 5, 2004.

Daniel Thomas Pascucci, Fish and Richardson, San Diego, CA, for Plaintiff.

Thomas Dale Bunton, County of San Diego Office of County Counsel, San Diego, CA, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS CONSTRUED AS A MOTION TO DISMISS

KEEP, District Judge.

Defendants County of San Diego, Greg Cox, Dianne Jacob, Pam Slater, Ron Roberts, and Bill Horn (collectively "defendants") filed a motion for judgment on the pleadings for failure to state a claim on November 17, 2003. Plaintiffs, Sprint Telephony PCS and Pacific Bell Wireless, filed an opposition to the motion for judgment on the pleadings on December 1, 2003. Defendants filed a reply on December 8, 2003. Both plaintiffs and defendants are represented by counsel.

## I. Background

### A. Factual Background

The following is taken from the pleadings and is not to be construed as findings of fact by the court.

Plaintiffs are federally licensed providers of commercial mobile radio service. *See Complaint* ¶ 1. They seek to implement a wireless telecommunications network throughout San Diego County and the nation. *See id.* ¶ 2. In order to develop such a network, plaintiffs intend to construct the infrastructure necessary to provide commercial mobile radio service, which includes the construction and installation of wireless antenna facilities within San Diego County. *See id.* ¶ 1. According to plaintiffs, the federal Telecommunications Act of 1996 ("TCA") authorizes them to install wireless antenna facilities in San Diego County. *See id.* ¶ 2. Plaintiffs allege, however, that a San Diego County Ordinance, "An Ordinance Amending the San Diego County Zoning Ordinance Relating to Wireless Telecommunications Facilities," ("the Ordinance"), inhibits their ability to install these wireless antenna facilities, thereby violating the TCA. *See id.* ¶ 2. The TCA, they contend, preempts the Ordinance.

By enacting the TCA, Congress adopted a framework for the deployment of a national, technologically advanced communication system. *See id.* ¶ 15. The TCA was intended, in part, to promote competition and deregulation in local telecommunications markets. *See id.* ¶ 16. Accordingly, the TCA preempts local authority to prohibit or effectively prohibit the provision of telecommunications service. *See id.* ¶ 21. Congress, however, did establish "safe harbor" provisions that allow state

and local governments to retain some oversight of the development of such a network in their counties. *See id.* ¶ 22.

The Ordinance establishes "comprehensive guidelines for the placement, design, and processing of wireless telecommunications facilities in all zones within the County of San Diego." *See id.* ¶ 29. Plaintiffs allege that the Ordinance exceeds the authority reserved to local government because it prohibits or effectively prohibits the provision of telecommunications service and does not fall within a "safe harbor." *See id.* ¶ 29(a), 31–32. Therefore, plaintiffs state four causes of action arising from the county's implementation of the Ordinance. First, plaintiffs claim defendants violated the TCA's prohibition of provision of telecommunications service, 47 U.S.C. § 253(a). *See id.* ¶ 34–36. Plaintiffs' second cause of action alleges that defendants violated section 253(c)'s prohibition against discriminatory regulation of a public right-of-way and the Fourteenth Amendment. *See id.* ¶ 37–40. Third, plaintiffs claim defendants violated 42 U.S.C. § 1983. Finally, plaintiffs sue for a declaratory judgment. *See id.* ¶ 48–50.

### B. Procedural Background

On September 9, 2003, defendants filed a motion to dismiss for failure to state a claim. Plaintiffs filed an opposition to defendants' motion on September 30, 2003, and defendants filed a reply memorandum on October 6, 2003. On October 20, 2003, after considering the parties' briefs, the court dismissed with prejudice plaintiffs' second cause of action for violation of 47 U.S.C. § 253(c). *October 20, 2003 Order ("Order")* at 8. The court further dismissed plaintiffs' second cause of action for violation of the Fourteenth Amendment without prejudice. *Id.* The court denied defendants' motion to dismiss the first, third, and fourth causes of action.

On November 17, 2003, defendants filed a motion for judgment on the pleadings, again relying on a defense of failure to state a claim. *See Defendants Motion for Judgment on the Pleadings ("Defendants' Motion")* at 2. It is this motion that is now before the court. Defendants request that the court now dismiss plaintiffs' first and third causes of action for failure to state a claim upon which relief may be granted. *See id.*

### II. Standard of Review

### A. Defendants' Motion for Judgment on the Pleadings

Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c). Plaintiffs contend that defendants' motion is properly considered a motion to dismiss pursuant to FRCP 12(b)(6). *See Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings ("Opposition")* at 2.

A Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss are virtually interchangeable. *See* William W. Schwarzer, et al., *Federal Civil Procedure Before Trial* § 9:319 (2003). In fact, the same standard applies to both. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989) (stating standard for motion for judgment on the pleadings); *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988) (stating standard for motion to dismiss). The only differences between the two motions are (1) the timing (a motion for judgment on the pleadings is usually brought *after* an answer has been filed, whereas a motion to dismiss is typically brought *before* an answer is filed), *see Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999), and (2) the party bringing the motion (a motion to dismiss may be brought *only* by the

party against whom the claim for relief is made, usually the defendant, whereas a motion for judgment on the pleadings may be brought by *any* party). *See In re Villegas,* 132 B.R. 742, 744–45 (9th Cir. BAP1991). Because the two motions are analyzed under the same standard, a court considering a motion for judgment on the pleadings may give leave to amend and "may dismiss causes of action rather than grant judgment". *See Federal Civil Procedure Before Trial, supra* at § 9:341; *Moran v. Peralta Cmty College Dist.,* 825 F.Supp. 891, 893 (N.D.Cal.1993). The mere fact that a motion is couched in terms of Rule 12(c) does not prevent the district court from disposing of the motion by dismissal rather than judgment. *See Amersbach v. City of Cleveland,* 598 F.2d 1033, 1038 (6th Cir.1979). Therefore, the court considers defendants' motion as it would a motion to dismiss, and declines to grant judgment at this point.

## B. Legal Standard

 The Federal Rules of Civil Procedure, Rule 12(b)(6) and Rule 12(c), allow a court to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a dismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri,* 901 F.2d at 699; *Hal Roach Studios,* 896 F.2d at 1550. In applying this standard, the court's review is limited to the contents of the complaint. *See Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir.1996); *Hal Roach Studios,* 896 F.2d at 1550. The court must accept all factual allegations pleaded in the complaint as true, construing and drawing all reasonable inferences from the allegations in favor of the nonmoving party. *See Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996); *Wager v. Pro,* 575 F.2d 882, 884 (D.C.Cir.1976). However, the court need not accept as true unreasonable

inferences or conclusory legal allegations cast in the form of factual allegations. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Moreover, the court does not have to accept as true conclusory allegations that contradict facts that may be judicially noticed or that are contradicted by documents referred to in the complaint. *See, e.g., Steckman v. Hart Brewing Inc.,* 143 F.3d 1293, 1295–96 (9th Cir.1998).

## III. Discussion

### A. Threshold Issue: Court's Consideration of Defendants' Motion

Defendants submitted their motion for judgment on the pleadings without thoroughly addressing the fact that they had already raised the defense of failure to state a claim in their earlier motion to dismiss. *See Defendants' Memorandum of Points and Authorities in Support of their Motion for Judgment on the Pleadings ("Defendants' Memorandum")* at 3, n. 1 (stating only, "[b]ecause the County asserts that plaintiffs' first and third causes of action fail to state claims upon which relief can be granted, the County has not waived these arguments by not raising them in its motion to dismiss. Fed. R.Civ.P. 12(g) and 12(h)(2)."). In their opposition, plaintiffs asserted four reasons that the court should refuse to even consider defendants' motion. *See Opposition* at 2–6. First, plaintiffs contend that defendants' motion is not a proper 12(c) motion. *Id.* at 2. Second, they assert that FRCP 12(g) precludes defendants from bringing their motion. *Id.* at 3. Third, they argue that the "law of the case" doctrine bars consideration of defendants' motion. *Id.* at 4. Finally, they contend that there is no good cause for defendants' motion, and therefore, the court, in its discretion, need not consider the motion.

*Id.* at 5. Defendants respond to plaintiffs' arguments more thoroughly in their reply. *See Defendants' Reply Memorandum* at 1–3.

### i. *Propriety of 12(c) Motion*

Plaintiffs argue that defendants' Rule 12(c) motion is improper because defendants cannot show that plaintiffs are entitled to no relief under any state of facts that could be proven in support of plaintiffs' claims. *See Opposition* at 2. As discussed above, the court will not grant judgment as a matter of law at this point. *See supra* Part II(A). The court has decided to consider defendants' motion as it would a motion to dismiss, granting only dismissal with leave to amend rather than judgment. *Id.* Therefore, whether defendant properly brought this motion under 12(c) is irrelevant and the court will not make a determination as to this issue.

### ii. *FRCP 12(g) and 12(h)(2)*

■ Rule 12(g) states in part:

If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Fed.R.Civ.P. 12(g). Rule 12(h)(2) states: "[a] defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P. 12(h)(2).

Plaintiffs argue that Rule 12(g) precludes successive motions to dismiss and that defendants earlier motion to dismiss and the instant motion for judgment on the pleadings are successive because they both raise the same defense: failure to state a claim upon which relief can be granted. *See Opposition* at 3. Moreover, plaintiffs assert that the exception provided in Rule 12(h)(2) allowing defendants to raise a defense of failure to state a claim in a motion for judgment on the pleadings is implicated only if the defense was *omitted* from their earlier motion. *Id.* at 4. Plaintiffs conclude that, because defendants did not *omit* their defense of failure to state a claim in their earlier motion, but rather raised the defense but failed to articulate every ground in support of that defense, Rule 12(h)(2) does not apply and defendants may not *again* raise the defense of failure to state a claim. *See id.* at 4.

In response, defendants propose an alternative interpretation of Rules 12(g) and 12(h)(2). *See Defendants' Reply Memorandum* at 1–2. Defendants argue that 12(h)(2) is an exception to Rule 12(g)'s consolidation requirement. As such, they argue that 12(h)(2) permits defendants to raise new arguments related to certain specified defenses, failure to state a claim among them, in a motion for judgment on the pleadings at any time, even if they already raised the defense in an earlier motion to dismiss. *See id.* at 2.

Both parties base their interpretations on a reading of the specified provisions and neither provides binding authority that is specifically on point. However, the court recognizes a tension and inconsistency between the policy underlying Rule 12(g)'s consolidation requirement and Rule 12(h)(2)'s apparent exception for motions for judgment on the pleadings. " 'The philosophy underlying [Rule 12(g) ] is simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics.' " *Aetna Life Ins. Co. v. Alla Medical Servs., Inc.,* 855 F.2d 1470, 1475, n. 2 (9th Cir.1988) (quoting 2A Moore et al., *Moore's Federal Practice* ¶ 12.22 at 12–192 (2d ed.1987)).

It is inconsistent with this policy to find that defendants may avoid 12(g)'s consolidation requirement merely by framing their motion as a motion for judgment on the pleadings. Further, it is a waste of judicial resources to consider motion after motion in which defendants raise the same defense over and over, each time testing a new argument. Allowing such a tactic means that defendants potentially could stall litigation indefinitely as long as they can conjure up a new argument on which to base a failure to state a claim defense. The court considers defendants' failure to raise all of its arguments, with respect to its defense of failure to state a claim, sloppy at least. However, the court is not convinced by the authority provided by plaintiffs that the court need not consider the merits of defendants' motion.

### iii. *Law of the case doctrine*

 Plaintiffs also argue that defendants' motion is barred by the "law of the case" doctrine. *See Opposition* at 4. The law of the case doctrine precludes a court from "reconsidering an issue that has already been decided by the same court or a higher court in the identical case." *Opposition* at 4 (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997)). The court rejects plaintiffs' argument because, although the court previously considered defendants' failure to state a claim *defense* in its earlier order, the court has not considered the *issues* defendants now raise in their motion presently before the court, specifically, whether § 253 of the TCA provides a private right of action, whether § 253 gives rise to a § 1983 claim, and whether the individual defendants are immune from liability. *See October 20, 2003 Order* at 3–9; *Defendants' Motion for Judgment on the Pleadings* at 2. Because the court has not yet considered these specific issues, the court finds that applying the "law of the case" doctrine is inappropriate in these circumstances.

### iv. *Good Cause*

Plaintiffs also contend that defendants have failed to demonstrate that good cause exists for the court to consider their motion. *See Opposition* at 5. " 'Under [FRCP] 12(c), good cause for such a motion must be shown, and ruling on the motion is a matter within the Court's discretion.' " *Opposition* at 5 (quoting *Provenzano v. United States*, 123 F.Supp.2d 554, 556 (S.D. Cal 2000)). However, as discussed above, the court has decided to consider defendants' motion as it would a motion to dismiss. *See supra* Part II(A). As a result, the court finds that it would be inappropriate to hold defendants to a standard intended for Rule 12(c) motions. Moreover, because the legal issues presented in defendants' motion are not frivolous, the court finds, in its discretion, that a consideration of the issues would not be inappropriate. Having rejected all of plaintiffs' arguments, the court now turns to the merits of defendants' motion.

### B. Private Right of Action Under Section 253(a)

 Because the court's analysis of this issue requires consideration of various subsections of section 253, the court includes section 253, subsections (a) through (d), in full. Section 253 includes the following provisions:

### § 253. Removal of Barriers to Entry

### (a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

### (b) State regulatory authority

Nothing in this section shall affect the ability of a State·to impose, on a compet-

itively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

**(c) State and local government authority**

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

**(d) Preemption**

If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

47 U.S.C. § 253.

Defendants seek dismissal of plaintiffs first cause of action for violation of § 253(a) on the ground that § 253(a) does not create a private right of action. *See Defendants' Motion* at 3. Plaintiffs argue that the weight of authority indicates otherwise. *See Opposition* at 7–16. The authority presented by both parties demonstrates that there is no binding authority that squarely addresses and resolves this issue.

Defendants cite three non-binding cases in support of their argument, each of which concludes that no private right of action exists to enforce § 253(a). *See Qwest Communications v. City of Berkeley,* 202 F.Supp.2d 1085 (N.D.Cal.2001); *Cablevision of Boston, Inc. v. Public Improvement Comm'n,* 184 F.3d 88 (1st Cir. 1999); *Pacific Bell v. City of Hawthorne,* 188 F.Supp.2d 1169 (C.D.Cal.2001). Plaintiffs, however, rely on a different set of authority to support the contrary proposition: that § 253 does create a private right of action. *See City of Auburn v. Qwest Corp.,* 260 F.3d 1160, 1177 (9th Cir.2001) (allowing a private party to challenge a local ordinance and concluding that the ordinance was contrary to § 253 and therefore preempted by § 253); *Cox Communications PCS L.P. v. City of San Marcos,* 204 F.Supp.2d 1272 (S.D.Cal.2002) (reasoning that § 253 provides a cause of action against local regulations); *TCG Detroit v. City of Dearborn,* 206 F.3d 618, 624 (6th Cir.2000) (holding that § 253(c) authorizes a private right of action); *BellSouth Telecommunications, Inc. v. Town of Palm Beach,* 252 F.3d 1169, 1191 (11th Cir.2001) (holding that a private right of action exists under § 253 if the ordinance at issue potentially implicates § 253(c)); *New Jersey Payphone Ass'n, Inc. v. Town of West New York,* 299 F.3d 235, 241 (3d Cir.2002) (assuming, for purposes of this case only, that a private right of actions exists under § 253).

■ Because there is no clear authority binding the court on this issue, the court turns to the analysis established by the Supreme Court to determine whether a private right of action exists under § 253(a). In *Cort v. Ash,* the Supreme Court set forth four factors relevant to a determination of "whether a private remedy is implicit in a statute not expressly providing one." *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The factors are as follows: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted," *id.* (citing *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed.

874 (1916)); (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether implying a private remedy is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is in an area of law traditionally the concern of the states. *Id.* Since the Court established this analysis, it has become somewhat less willing to imply a private right of action. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82, 99 S.Ct. 2479 (1979). A majority of the Court, however, still agrees that *Cort v. Ash* is the appropriate analysis for courts to employ. *See Thompson v. Thompson,* 484 U.S. 174, 188, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring in the judgment). Thus, the Court's adoption of a new *"stricter standard* of congressional intent," *see Touche Ross & Co.,* 442 U.S. at 578, 99 S.Ct. 2479, appears to require some affirmative evidence of congressional intent, in "the language and focus of the statute, its legislative history, and its purpose." *Id.* at 575–76, 99 S.Ct. 2479. The court now turns to this analysis.

i. *Plaintiffs as "One of the Class for Whose Especial Benefit the Statute was Enacted"*

Plaintiffs contend, and defendants do not dispute, that plaintiffs, commercial mobile radio service providers, are among the class for whose benefit section 253(a) was enacted. *See Opposition* at 12; *Defendants' Memorandum* at 3. As evidenced by its title, the Telecommunications Act clearly governs the telecommunications industry, of which plaintiffs, telecommunications service providers are members. More specifically, the statute specifically benefits telecommunications providers, like plaintiffs, by restricting the authority of states and localities to regulate the industry. *See* 47 U.S.C. § 253(a). Thus, plaintiffs are clearly among the class for whose especial benefit the TCA was enacted and this factor weighs towards implying a private right of action from § 253(a).

ii. *Indication of Legislative Intent*

The parties disagree as to whether Congress intended to create or deny a private cause of action under § 253(a). *See Defendants' Memorandum* at 4; *Opposition* at 12–14; *Defendants' Reply* at 7. Both parties turn first to the plain language of the statute. Plaintiffs point out that § 255, "which is in the same Title, Chapter, Subchapter, and Part as section 253," expressly foreclosed a private right of action under that provision. *Opposition* at 12–13. Therefore, they argue, when Congress intends to foreclose a private right of action in the TCA, it does so explicitly. Congress did not foreclose the right explicitly, they conclude, thus the omission is affirmative evidence of legislative intent to allow a private right of action. *Id.* Defendants, however, cite § 207 of the TCA, in which Congress explicitly permitted a private right of action. *Defendants' Memorandum* at 4. Hence, they conclude, contrary to plaintiffs' assertion, that when Congress intends to create a private right of action, it does so explicitly. These arguments carry equal weight, and as such they do not provide affirmative evidence that Congress intended to create a private right of action under § 253(a). The court, therefore, turns to the legislative history.

In the legislative history, Senator Gorton states that § 253(c) "preserves to local governments control over their public rights of way. It accepts the proposition ... that these local powers should be retained locally, that any challenge to them take place in the Federal district court in that locality and that the [FCC] not be able to preempt such actions." 141 Cong. Rec. S8213 (June 13, 1995). Plaintiffs rely

on this section to support their argument that Congress intends that a private right of action be available under § 253. *Opposition* at 13. Defendants, however, attempt to restrict the scope of Senator Gorton's comments, arguing that the statements address only the narrow issue of the interplay between §§ 253(c) and 253(d) and in no way implicate § 253(a). *Defendants' Reply* at 7. Because § 253(d) provides for FCC enforcement of §§ 253(a) and (b), but not for § 253(c), defendants argue, Congress must have intended to create a private right of action for § 253(c), but not for § 253(a). *Id.*

The court does not find defendants' arguments persuasive. Senator Gorton's remarks undoubtedly indicate that he envisioned challenges to section 253(c) taking place in district courts. *See* 141 Cong. Rec. S8213 (June 13, 1995) ("[A]ny challenge ... [should] take place in the ... district court in that locality."). Further, Senator Gorton clearly is *not* talking about challenges by the FCC because, after stating that challenges should take place in local district courts, he expresses that the FCC "[will] not be able to preempt such actions." *Id.* Thus, the actions of which Senator Gorton speaks must be actions brought by private parties or persons.

Next, in considering the Senator's remarks in conjunction with § 253 as a whole, the court finds that it makes no sense to interpret his remarks as applying only to subsection (c), and not to § 253 more broadly. As this court addressed in its order addressing defendants' earlier motion to dismiss, § 253(c) is a safe harbor provision that is implicated only once a violation of § 253(a) has been established. *See October 20, 2003 Order* at 7–8. The court relied on interpretations of § 253 by both the Ninth Circuit and the FCC in reaching this conclusion. *See Order* at 7–8. Specifically, the court quoted the Ninth Circuit reasoning that "[o]nly

regulations that do not fall within a safe harbor provision, such as § 253(c) are preempted." *See id.* at 7 (quoting *City of Auburn*, 260 F.3d at 1177). The court also quoted the FCC, which stated, "parties should first describe whether the challenged requirement falls within the proscription of section 253(a); if it does, parties should describe whether the requirement nevertheless is permissible under other sections of the statute, specifically sections 253(b) and (c)." *See id.* (quoting 13 FCC Rcd 22971 (1998)). Thus, if § 253(c) is a safe harbor (as this court has concluded it is), then § 253(c) is never implicated unless § 253(a) is considered first, because, as a safe harbor, § 253(c) is an exception to or qualification of § 253(a)'s blanket prohibition. Therefore, the only way Senator Gorton's intent that private challenges to § 253(c) be heard by district courts can be carried out is if this court first hears the prerequisite challenge to § 253(a). The court concludes that Senator Gorton's remarks, made in the legislative history, though focused on § 253(c), naturally implicate § 253(a), and as such are affirmative evidence of Congress's intent to make § 253(a) privately enforceable. The court concludes that this factor weighs towards implying a private right of action under § 253(a).

### iii. *Consistency with Underlying Purposes of Legislative Scheme*

Plaintiffs argue that allowing them to bring a private right of action under § 253(a) is consistent with the purpose of the TCA. Defendants disagree. The Ninth Circuit states that the TCA "was passed to promote competition among and reduce regulation of telecommunications providers." *City of Auburn*, 260 F.3d at 1170. The full title reflects the same, as it is titled: "An Act to promote competition and reduce regulation in order to secure

lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." *Id.* Further, the conference committee report notes that "the purpose of the statute is to provide for a 'procompetitive, deregulatory national policy framework.'" *Id.* (citing H.R.Rep. No.104–458 (1996)).

Defendants argue that because Congress intended that the FCC enforce § 253, allowing a private right of action is inconsistent with this intent. *See Defendants' Memorandum* at 4. The court finds this argument unpersuasive. Defendants state as a foregone conclusion that Congress intended *only* the FCC to enforce § 253's preemption of state and local regulations. *Id.* In so doing, they essentially ask the court to accept their conclusion that only the FCC may enforce § 253(a) and to then rely on that conclusion to determine that only the FCC may enforce § 253(a). Such an argument is conclusory and lacks support. Moreover, whether Congress intended only the FCC to enforce § 253(a) is the very issue the four factor *Cort v. Ash* test is intended to resolve and the analysis through which this court proceeds. Additionally, defendants' argument revolves around Congress's intent with respect to the narrow issue of whether to allow a private right of action, when the focus of this factor is Congress's underlying purpose in enacting the legislative scheme. *See* 47 U.S.C. § 253(a).

Next, defendants' position in their briefs and at oral argument was that possible enforcement by the FCC and the availability of suit for injunctive relief pursuant to the Supremacy Clause are remedies adequate to support § 253(a). *See Defendants' Memorandum* at 3. The court finds that such a limitation on available remedies is inconsistent with the underlying purpose of the legislative scheme. Although Senator Feinstein expressed concern about the "costs that would be imposed on local governments if they were required to travel frequently to Washington, D.C. to defend their actions before the FCC," *see Defendants' Memorandum* at 8 (citing 141 Cong. Rec. S8170) (June 12, 1995), the court also considers the potential costs to telecommunications companies of challenging ordinances across the country only on the basis of the Supremacy Clause, and therefore, only recovering injunctive relief. Such costs could certainly be large and even prohibitive. Restricting the availability of remedies under § 253 results in limiting the benefits telecommunications providers and, therefore, consumers, receive from the TCA. The court finds that such a remedial scheme is inconsistent with the purpose of the legislative scheme, namely to "secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." *City of Auburn*, 260 F.3d at 1170 (citing H.R.Rep. No. 104–458 (1996)). The court concludes that, in comparing these two alternatives, allowing a private action is more consistent with the underlying purpose of the legislative scheme than disallowing it.

Consideration of the potential consequences of denying a private right of action under § 253 further supports the court's conclusion. According to § 253(d), the FCC may enforce § 253(a) only after "notice and an opportunity for public comment." 47 U.S.C. § 253(d). Even then, the FCC may only preempt the state or local regulation. *See id.* Thus, no monetary damages are available. Further, a backlog in enforcement could cause the FCC to take several years to consider whether a state or local regulation is preempted. In the meantime, the telecommunications community might give up on developing the technology and installing it in the San Diego area and other areas with similar

ordinances. The court finds that this likely result is certainly contrary to the intended purpose of the TCA and, therefore, is further support for allowing a private right of action under § 253(a).

The court, therefore, agrees with plaintiffs that allowing plaintiffs to bring a private action is consistent with the stated legislative purpose of reducing regulation and creating a national framework for the telecommunications industry. This factor, therefore, weighs in favor of allowing a private right of action under § 253(a).

### iv. Area of Law Traditionally the Concern of the States

Like the first factor, plaintiffs contend and defendants do not dispute that the matter involved is not an area of law of prevailing concern to the states. See Opposition at 15; Defendants' Memorandum at 3. As its language demonstrates, the TCA is clearly national in scope. 47 U.S.C. § 253(a) ("No State or local statute or regulation, or other State or local legal requirement, may prohibit ...."). The Ninth Circuit has interpreted the statute and reached a similar conclusion. See City of Auburn, 260 F.3d at 1175 ( "[C]ertain aspects of telecommunications regulation are uniquely the province of the federal government and Congress has narrowly circumscribed the role of state and local governments in this arena."). The court concludes, therefore, that this factor weighs towards implying a private right of action.

### v. Conclusion

The court analyzed each factor of the Cort v. Ash test and finds that each weighs in favor of implying a cause of action. The court therefore concludes that Congress impliedly created a private right of action under § 253(a).

## C. Section 1983 Right of Action

Plaintiffs bring their third cause of action for violation of 42 U.S.C. § 1983. Plaintiffs allege violation of a federal statute, 47 U.S.C. § 253, as a basis for their section 1983 cause of action. See Complaint at ¶ 42. Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; Blessing v. Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). The Supreme Court has held that a § 1983 suit is available anytime the Constitution or a federal statute has allegedly been violated. See Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Since Maine v. Thiboutot, however, the Court has articulated two exceptions that narrow somewhat the wide availability of § 1983. First, in order to seek redress through § 1983, a plaintiff must assert the violation of a federal right, not merely a violation of federal law. Blessing, 520 U.S. at 340, 117 S.Ct. 1353 (citing Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). Second, § 1983 may not be used to enforce statutes that explicitly or implicitly preclude § 1983 litigation. Smith v. Robinson, 468 U.S. 992, 1005, n. 9, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (citing Middlesex County Sewerage Authority v. National Sea Clammers Ass'n., 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)).

### i. Federal Right

The Supreme Court considers three factors relevant in determining whether a particular statutory provision gives rise to a federal right. See Blessing, 520 U.S. at 340–41, 117 S.Ct. 1353. First, Congress must have intended the provision in question to benefit the plaintiff. Id.

(citing *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 430, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)). Second, the right allegedly protected by the statute must not be so "vague and amorphous" that its enforcement would strain judicial competence. *Id.* at 431–32, 117 S.Ct. 1353 (citing *Wright,* 479 U.S. at 430–31, 107 S.Ct. 766). Third, the statute must unambiguously impose a binding obligation on the states. *Id.* at 329, 117 S.Ct. 1353 (citing *Wilder v. Virginia Hospital Ass'n.,* 496 U.S. 498, 510–11, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)).

First, as discussed above with respect to implying a cause of action under § 253(a), in the instant case, Congress intended the TCA to benefit telecommunications providers like plaintiffs. The full title of the Act is "An Act to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." *City of Auburn,* 260 F.3d at 1170 (citing H.R.Rep. No. 104–458 (1996)). It is clear from the plain language of the statute's title that consumers are the primary intended beneficiaries of the TCA. Yet the companies who provide telecommunications services to consumers are the means by which the statute may reach its desired end of lower prices and higher quality services for consumers. As such, telecommunications companies are also intended beneficiaries of the TCA, even if only secondarily. The Ninth Circuit apparently agrees. *See City of Auburn,* 260 F.3d at 1170 (stating that the TCA "was passed to promote competition among and reduce regulation of telecommunications providers."). Thus, plaintiffs, telecommunications providers, are intended beneficiaries of the TCA.

Second, § 253 of the TCA has been interpreted and enforced on multiple occasions, both by the Ninth Circuit and other courts in this district. *See, e.g., City of Auburn,* 260 F.3d at 1170–80; *Cox Communications PCS L.P. v. City of San Marcos,* 204 F.Supp.2d 1272, 1278–82 (S.D.Cal. 2002). Enforcement of section 253, therefore, does not strain judicial competence, although I concede I may lack the competence of my brothers and sisters on the bench, as interpreting § 253 is straining me.

■ Third, the TCA unambiguously imposes a binding obligation on municipalities. In order to unambiguously impose a binding obligation, the provision must indicate "more than a confessional preference." *Wright,* 479 U.S. 418, 423, 107 S.Ct. 766 (1987). That is, it "must be couched in mandatory, rather than precatory, terms." *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353. Section 253(a) states: "[n]o state or local statute or regulation … may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). This language is unambiguous in its intent to impose a binding obligation on the states because it states a definitive prohibition, not a mere preference. *Accord Cox Communications,* 204 F.Supp.2d at 1281–82 (concluding that 253(a) imposes a binding obligation). Thus, the court concludes that § 253 creates a federal right.

ii. *Explicit or Implicit Preclusion*

■ Once it is established that a statute creates a federal right, a rebuttable presumption that the right is enforceable under section 1983 arises. *See Blessing,* 520 U.S. at 341, 117 S.Ct. 1353. More specifically, there is a presumption in favor of availability of § 1983 and the burden rests on the defendant to demonstrate "by express provision or other specific evidence from the statute itself that Congress

intended to foreclose [1983 litigation]." *Wright,* 479 U.S. at 424, 107 S.Ct. 766.

### a. *No § 253(a) Private Right of Action*

■ Defendants first attempt to rebut the presumption by arguing that there is no private right of action under § 253(a), and that, therefore, plaintiffs only claim under § 253(a) is a claim for preemption. *Defendants' Memorandum* at 6. This is relevant, they contend, because a claim for preemption based on the Supremacy Clause does not give rise to a § 1983 claim because the "Supremacy Clause does not, of its own force, create rights enforceable under section 1983." *Id.* (citing *Gemtel Corp. v. Cmty. Redevelopment Agency,* 23 F.3d 1542, 1546–47 (9th Cir.1994)). This argument fails to rebut the presumption in favor of a § 1983 claim because, as discussed above, the court concludes that § 253(a) does create a private right of action. *See supra* Part III(B). Moreover, as analyzed under the three part *Wright* test, the court concludes that § 253(a) does create a federal right rather than a mere statutory right. *See supra* Part III(C)(i). This argument, therefore, does not rebut the presumption that a right of action under § 1983 is available.

### b. *Legislative History*

Defendants rely next on *Qwest Corp. v. City of Santa Fe,* 224 F.Supp.2d 1305 (D.N.M.2002) to support their argument that Congress intended to foreclose litigation under § 1983. *See Defendants' Memorandum* at 7. In concluding that Congress foreclosed § 1983 litigation in the TCA, the court in *City of Santa Fe* relied on legislative history of the TCA in which Senator Feinstein expressed "concerns about costs that would be imposed on local governments if they were required to travel frequently to Washington, D.C. to defend their actions before the FCC." *See Defendants' Memorandum* at 8 (citing 141 Cong. Rec. S8170) (June 12, 1995). The

*City of Santa Fe* court took from Senator Feinstein's remarks that § 253 does not give rise to a § 1983 claim because allowing § 1983 claims would mean local governments could potentially be required to pay their opponent's attorney fees." *Qwest Corp. v. City of Santa Fe,* 224 F.Supp.2d 1305, 1315–16 (D.N.M.2002). Attorney fees, this court agrees, could increase the cost to local governments in much the same way travel expenses could. However, although Senator Feinstein clearly expresses concern about the costs associated with enforcing the TCA before the FCC in Washington, she does not indicate that no mechanism can be used to enforce it because all increased costs to local governments are prohibited by the TCA. Hence, the legislative history defendants cite is too attenuated to be persuasive on this issue. Moreover, despite the expressed concern regarding the costs of enforcement, Congress clearly still intends that the FCC enforce the TCA. *See* 47 U.S.C. § 253(d). Thus, to conclude that because § 1983 provides for attorney fees Congress must intend for no private enforcement is inconsistent with Congress' demonstrated desire for enforcement despite its costs.

Plaintiffs cite "legislative history" that is much more specific to the issue at hand. The history they cite states that "Section 601(c) [of the TCA] precludes any party from arguing that the 1996[TCA] modifies, impairs, or supersedes any existing federal ... law by implication. The [TCA] is to be construed as modifying an existing law only when it expressly so states." *Opposition* at 20 (citing Robert E. Emertitz et al., *The Telecommunications Act of 1996 Law & Legislative History* 54 (1996)). Such remarks certainly reflect an intent by Congress to leave available a § 1983 remedy. However, in its review of the legislative history, the court is unable to find this particular quote and notes that plaintiffs

cite a secondary source rather than the history itself. If this statement is in the legislative history, it certainly bolsters the court's determination. Even without it, the court finds defendants' argument insufficient to rebut the presumed availability of § 1983.

### c. *Comprehensive Remedial Scheme*

Defendants further argue that the TCA creates a comprehensive remedial scheme that is incompatible with enforcement under § 1983. *See Defendants' Memorandum* at 8. Defendants again rely on *City of Santa Fe* to support their proposition because the district court in that case found § 253's remedial scheme comprehensive. This court, however, disagrees with the *City of Santa Fe* court's characterization of § 253's remedial scheme as "comprehensive."

In *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.*, the Supreme Court analyzed whether the remedial schemes of two statutes were "comprehensive" thereby foreclosing the availability of § 1983. *See* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). The Court concluded that the remedial schemes of the two statutes were in fact "comprehensive" largely because the statutes contained "so many specific statutory remedies" as well as citizen suit provisions. *See id.* at 20, 101 S.Ct. 2615. Although the Supreme Court has not explicitly articulated what "comprehensive" means with respect to a statutory remedial scheme, the court considers *Sea Clammers* its best guide.

In *Sea Clammers,* the Supreme Court focused primarily on the complexity of the remedial schemes in the statutes. The Court reasoned that "[i]t is hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies, including the two citizen-suit provisions." *Id.* at

20, 101 S.Ct. 2615. As an example of the complexity of the remedial schemes provided for in the two statutes at issue in the *Sea Clammers* case, the court includes the remedial scheme from The Federal Water Pollution Control Act ("FWPCA"). The FWPCA states as follows:

(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf-

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

(b) No action may be commenced-

(1) under subsection (a)(1) of this section-

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the

United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator, except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

The Administrator may intervene in any citizen suit.

*Sea Clammers*, 453 U.S. at 8, n. 9 (quoting 33 U.S.C. § 1365). The remedial scheme set forth in the Marine Protection, Research, and Sanctuaries Act is of similar length and detail. *See Sea Clammers*, 453 U.S. at 8, n. 11, 101 S.Ct. 2615 (quoting 33 U.S.C. §§ 1415(g)(1), (2)).

The only remedial provision provided by § 253 of the TCA states:

If, after notice and an opportunity for public comment, the [FCC] determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

47 U.S.C. § 253(d). Thus, § 253(d) requires the FCC to preempt the enforcement of a state or local regulation that is inconsistent with §§ 253(a) or 253(b). *See* 47 U.S.C. § 253(d). The court in *City of Santa Fe* considered this "remedial scheme" comprehensive, and therefore concluded that § 1983 remedy was foreclosed. *See City of Santa Fe*, 224 F.Supp.2d at 1315. This court, using *Sea*

*Clammers* as a guide, does not consider the remedy in § 253 comprehensive in nature.

The provision quoted from *Sea Clammers* is obviously much more specific than that at issue in this case. Both remedial schemes at issue in *Sea Clammers* describe in detail the citizen suits available. *See Sea Clammers*, 453 U.S. at 6–7, 101 S.Ct. 2615 ("[T]he FWCPA ... allows suits under the Act by private citizens, but authorizes only prospective relief, and the citizen plaintiffs first must give notice to the EPA, the State, and any alleged violator .... the MPRSA ... contains similar citizen-suit and notice provisions."). In contrast, § 253 of the TCA provides only one remedy, an administrative remedy through the FCC. *See* 47 U.S.C. § 253(d). Section 253 does not discuss any judicial remedies that individuals may seek (citizen suit provisions). Thus, not only is the "remedial scheme" not comprehensive in the number or type of remedies it expressly makes available, but neither is it comprehensive in terms of the detail with which it describes those remedies.

Defendants continually remind the court that plaintiffs always retain the option to sue for injunctive relief under the Supremacy Clause. *See, e.g., Defendants' Memorandum* at 3, n. 2. Thus, they contend, plaintiff has available a remedy beyond mere administrative enforcement, and hence, the remedial scheme is comprehensive. If the availability of such a suit made a remedial scheme "comprehensive," however, then nearly every statute's remedial scheme would be comprehensive, because such a remedy is almost always available. As demonstrated by the fact that the Supreme Court has set forth a means for analyzing this issue, whether a statute's remedial scheme is comprehensive is obviously an issue whose conclusion is not foregone. Thus, the court finds that

this argument adds nothing to defendants' position.

Because the Supreme Court obviously considered the comprehensiveness of the remedial scheme to be key in determining Congressional intent, in the instant case, the court follows suit and concludes that the TCA's very limited remedial provision impliedly reflects Congressional intent to leave intact the § 1983 right of action. The court, therefore, concludes that defendants' argument fails to provide specific evidence that Congress intended to foreclose a § 1983 remedy and therefore fails to rebut the presumed availability of § 1983.

### d. *Incompatibility with § 1983*

Defendants do not articulate support for their argument that § 253's remedial scheme is incompatible with availability of a § 1983 remedy. *See Defendants' Memorandum* at 8. The court points out that it does not find the remedial schemes of § 253 and § 1983 incompatible. Rather, the two schemes appear complementary in that, taken together, they provide both the administrative and judicial remedies that the Supreme Court in *Sea Clammers* found constituted a comprehensive remedial scheme. *See Sea Clammers*, 453 U.S. at 12, 101 S.Ct. 2615 ("These acts contain unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on government officials and private citizens."). Accordingly, the court concludes that § 253 and § 1983 are not incompatible.

### e. *Savings Clause*

Next, defendants attempt to overcome the presence of the savings clause in § 253. *See Reply* at 9. Although a savings clause is typically interpreted as reflective of Congress's desire to leave intact a § 1983 remedy, defendants attempt to downplay its significance in this case by analogizing to *Sea Clammers*, in which the

Supreme Court, despite a savings clause, found that the remedial schemes in the statutes at issue foreclosed a § 1983 remedy. *See Defendants' Reply* at 9 (citing *Sea Clammers*, 453 U.S. at 20–21, 101 S.Ct. 2615).

█ The savings clause in the TCA, however, is arguably much broader than those at issue in the statutes in *Sea Clammers*. The savings clause in the TCA states, "[the TCA] shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments." 47 U.S.C. § 152, historical and statutory notes, "Applicability of Consent Decrees and Other Law"(c)(1). The savings clause in the FWPCA specifies that the statute does not restrict the right of persons to "seek enforcement of any effluent standard ... or to seek any other relief," *id.* at 8, n. 10, 101 S.Ct. 2615, while the savings clause in the MPRSA similarly states that the statute does not restrict the right of persons to "seek enforcement of any standard or limitation or to seek any other relief." *Id.* at 8, n. 11, 101 S.Ct. 2615. The court finds TCA's savings clause broad, sweeping, and a clear indication that Congress intended to leave federal laws untouched and unaltered unless they specified otherwise explicitly, whereas the court finds the savings clauses in the FWPCA and the MPRSA narrower in scope and less specific in defining what remedies it leaves untouched. While the existence alone of a savings clause makes it more difficult for a court to find that Congress intended to foreclose § 1983 as a remedy, *see, e.g., Sea Clammers*, 453 U.S. at 21, n. 31, 101 S.Ct. 2615 (interpreting the savings clauses narrowly such that the clauses do not preserve a § 1983 remedy), a broad and sweeping clause like that in the TCA makes it even more difficult. For this reason, the court finds that defendants'

argument that the savings clause does not reflect that Congress intended to leave § 1983 available is weak and not supported by *Sea Clammers*. Moreover, as discussed above, it is the complexity of the remedial schemes on which the Supreme Court appears to base its opinion in *Sea Clammers*. *See id.* at 13, 101 S.Ct. 2615 ("These Acts contain unusually elaborate enforcement provisions"); *id.* at 14, 101 S.Ct. 2615 ("[i]n view of these elaborate enforcement provisions it cannot be assumed that Congress intended to authorize by implication other judicial remedies"). This court follows suit accordingly, focusing on the comprehensiveness of the remedial scheme in the TCA.

#### f. *Attorney Fees*

Defendants make one last attempt to convince the court that Congress specifically foreclosed a § 1983 right of action exists. They argue that Congress did not intend plaintiffs to recover attorney fees under § 1983 for violation of the TCA, and as such, no § 1983 right of action should be available. *See Defendants' Memorandum* at 9. They rely on a Third Circuit case in which the court reasoned that because TCA plaintiffs are often large corporations and defendants are often small municipalities, allowing plaintiffs to recover attorney fees as provided by § 1983 might alter the TCA's remedial scheme beyond what Congress intended. *See id.* (relying on *Nextel Partners Inc. v. Kingston Township,* 286 F.3d 687 (3d Cir.2002)). This argument is disingenuous, in that if a plaintiff prevailed on an injunctive action, the plaintiff would be entitled to attorney's fees from this same "small" municipality. The court finds this consideration, at best, tenuously related to Congressional intent. Such a suggestion is not supported by any legislative history or further authority. Moreover, in the instant case, the hypothesis does not prove true, as San Diego is hardly a small municipality, although like other California cities and the state itself, it is strapped for cash. Accordingly the court rejects this argument.

#### iii. *Conclusion*

By conducting the same analysis as the Supreme Court in *Sea Clammers*, this court concludes that *Sea Clammers* mandates that this court conclude that the TCA does not foreclose a § 1983 remedy. Based on all the foregoing reasons, the court concludes that defendants have failed to rebut the presumption that a right of action under § 1983 remains. Therefore, the court finds that plaintiffs may maintain a right of action under § 1983.

### D. Absolute Immunity

 The Supreme Court has long held that "legislators are absolutely immune from liability for their legislative activities." *See Bogan v. Scott–Harris,* 523 U.S. 44, 48, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). The Court also has found that local legislators are "likewise absolutely immune from suit under § 1983 for their legislative activities." *Id.* at 49, 118 S.Ct. 966. Defendants seek to dismiss plaintiffs' § 1983 claim for damages against the individual members of the San Diego County Board of Supervisors on the ground that their act of enacting the Ordinance is legislative, and they are therefore immune. *See Defendants' Reply* at 10. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54, 118 S.Ct. 966. Plaintiffs fail to include in their complaint any facts alleging that the individual defendants' act of enacting the ordinance was not legislative, nor do they include any such allegations in their opposition to the present motion. Plaintiffs' theory of why the individual defendants are not immune is that "officers acting under preempted law are 'stripped of their

official and representative character and are subjected in their person to the consequences of their individual conduct.' " *See Opposition* at 24 (citing *Ex Parte Young,* 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Stripping officers of their official or representative character does not affect whether their act of enacting an ordinance was legislative. Regardless of the character of the defendants, there is no set of circumstances under which plaintiffs could establish that the act of enacting an ordinance was not a legislative act. As such, the court concludes that plaintiffs' § 1983 claim for damages is dismissed as to defendants Greg Cox, Dianne Jacob, Pam Slater, Ron Roberts, and Bill Horn. The court dismisses the claim without prejudice.

## IV. Conclusion

For the foregoing reasons, the court **DENIES** defendants' motion to dismiss the first cause of action for violation of 47 U.S.C. § 253(a). The court further **DENIES** defendants' motion to dismiss the third cause of action for violation of § 1983 as to defendant the County of San Diego. The court **GRANTS** defendants' motion to dismiss plaintiffs' third cause of action against the individual defendants for damages for violation of § 1983. The court dismisses this cause of action with prejudice.

**IT IS SO ORDERED.**